10-3679-cv
Verus Pharm., Inc. v. AstraZeneca AB

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of June, two thousand eleven.

PRESENT: CHESTER J. STRAUB,
REENA RAGGI,
RICHARD C. WESLEY,
*Circuit Judges.*

------------------------------------------------------------------------

VERUS PHARMACEUTICALS, INC.,
*Plaintiff-Appellant*,

v.                                                                      No. 10-3679-cv

ASTRAZENECA AB, TIKA LÄKEMEDEL AB,
*Defendants-Appellees*.

------------------------------------------------------------------------

APPEARING FOR APPELLANT:     BLAIR C. FENSTERSTOCK, Fensterstock & Partners LLP, New York, New York.

APPEARING FOR APPELLEES:     AARON RUBINSTEIN (Phillip A. Geraci, Michael S. Bullerman, Aaron F. Miner, *on the brief*), Kaye Scholer LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 19, 2010, is AFFIRMED.

Plaintiff Verus Pharmaceuticals, Inc., appeals from the dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of its complaint against defendants AstraZeneca AB and Tika Läkemedel AB for breach and anticipatory breach of contracts relating to plaintiff's intellectual property rights in certain treatments for pediatric asthma ("the acquired assets"), fraud, conversion, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[1] To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), which standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A fraud claim must further satisfy Rule 9(b), which requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). While we review a judgment of dismissal de novo, see, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), in this case, applying New York law to the contracts at issue – the Asset Purchase Agreement ("APA"), the Collaboration Services Agreement ("CSA"), and the Repurchase Option Agreement ("ROA") – we affirm largely

---

[1] Tika Läkemedel AB is a wholly-owned subsidiary of AstraZeneca AB. The relevant agreements identify Tika Läkemedel as "Purchaser" and AstraZeneca as "Parent," and impose varying obligations on each. The parties have not assigned any significance to this distinction, however, and address their arguments on appeal to both defendants together. For convenience, we adopt this convention and refer to Tika Läkemedel and AstraZeneca collectively as "defendants."

for the reasons stated by the district court in its thorough opinion, <u>see</u> <u>Verus Pharm., Inc. v.</u> <u>AstraZeneca AB</u>, No. 09 Civ. 5660, 2010 WL 3238965 (S.D.N.Y. Aug. 16, 2010).  We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      <u>Breach of Contract</u>

    a.      <u>APA</u>

Plaintiff contends that APA § 5.3.3 imposes on defendants an obligation to take the acquired assets to an End of Phase 2 meeting ("EOP II meeting") with the U.S. Food and Drug Administration ("FDA").  The argument finds no support in the contract.  <u>See, e.g.</u>, <u>Diesel Props S.r.l. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 51 (2d Cir. 2011) (observing interpretation of unambiguous contract is matter of law).  Viewed in context, § 5.3.3 is reasonably interpreted to relate only to regulatory processes associated with execution of the asset purchase transaction, not subsequent development of the purchased assets.  <u>See, e.g.</u>, <u>Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.</u>, 595 F.3d 458, 466 (2d Cir. 2010) (interpreting contract in "context of the entire integrated agreement"); <u>Matter of Riconda</u>, 90 N.Y.2d 733, 738, 665 N.Y.S.2d 392, 396 (1997) (looking to "entirety" of agreement in context of "parties' relationship and circumstances").  This conclusion follows from § 5.3.3's placement among other provisions in the APA addressing pre-transaction regulatory and other obligations.  <u>See</u> APA § 5.3.2 (establishing obligations with respect to filings required by Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L. No. 94-435 (Sept. 30, 1976)), <u>see also</u> §§ 5.2.2, 5.4, 5.5, 5.6 (establishing certain pre-

3

closing covenants and other pre-closing obligations). The conclusion is reinforced by the totality of documents structuring the parties' relationship, which make clear that the CSA, not the APA, was intended to govern development of the acquired assets. See CSA pmbl. ¶ 4. Consequently, plaintiff fails to state a claim that defendants breached APA § 5.3.3 by failing to take the acquired assets to an EOP II meeting.

b. CSA

Plaintiff contends that the CSA also imposes an obligation on defendants to take the acquired assets to an EOP II meeting. Like the district court, we conclude that the CSA can only be construed to impose on defendants an obligation to use "diligent efforts" to develop the acquired assets, CSA § 10.1.1, not an "unqualified requirement to reach an EOP II meeting," Verus Pharm., Inc. v. AstraZeneca AB, 2010 WL 3238965, at *10. CSA § 10, entitled "The Purchaser Business Covenants," obligates defendants to "use Diligent Efforts to develop the [acquired assets] consistent with and in furtherance of the Joint Development Plan." CSA § 10.1.1.[2] The Joint Development Plan "outlines the technical and regulatory plans to move [the acquired assets] forward to a successful [EOP II meeting]," the "key project objectives" of which are set forth in accompanying Study Schedules. Joint Dev. Plan

---

[2] Diligent efforts are defined as the "efforts and resources used by [defendants] for [their] own compounds or products with similar commercial and scientific potential and at a similar stage in their lifecycle, taking into consideration their safety and efficacy, their cost to develop, the competitiveness of alternative or competing compounds or products, and the nature and extent of their market exclusivity . . ., the likelihood of regulatory approval, their expected profitability, . . . and all other relevant factors." CSA § 1.

4

at 3.[3] Thus, rather than create an unqualified obligation to reach an EOP II meeting, these provisions require defendants to use diligent efforts to develop the acquired assets consistent with plans intended to move the assets towards a successful meeting.

(i)     CSA § 2.2

In urging otherwise, plaintiff relies on CSA § 2.2, which states that "Purchaser shall perform the Purchaser Transition Services and use Diligent Efforts to execute the Joint Development Plan for the development of the Products (excluding Albuterol) and generate the applicable Work Product." CSA § 2.2. Because "Transition Services" are defined as "all services and other obligations to be conducted pursuant to [the CSA], including all services set forth on the Study Schedules," CSA § 1 (emphasis added), plaintiff argues that defendants are required to complete each Study Schedule, including Study Schedule 8. This argument proves too much. If CSA § 2.2 creates an obligation to complete each Study Schedule, it also creates an obligation to complete "all services and other obligations" required by the CSA, including the Joint Development Plan. Such a construction conflicts with both the general obligation (created in CSA § 10.1.1 and referred to in CSA § 2.2) that defendants use diligent efforts to execute the Joint Development Plan, and the specific obligation imposed by CSA § 3.3 to use diligent efforts in completing the Study Schedules. See, e.g., Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC, 74 A.D.3d 516, 518, 903 N.Y.S.2d 26, 28 (1st Dep't 2010) (stating "courts should construe a contract in a manner that avoids

---

[3] Study Schedule 8 contemplates taking the acquired assets to an EOP II meeting with the FDA.

inconsistencies and reasonably harmonizes its terms"); accord Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d at 468.

We therefore reject plaintiff's interpretation of CSA § 2.2 and, consequently, its argument that defendants breached that section by not taking the acquired assets to an EOP II meeting.

(ii) Diligent Efforts

Plaintiff next contends that defendants breached the CSA by failing to use diligent efforts to develop the acquired assets, but plaintiff's complaint does not allege a failure of diligent efforts. Rather, it alleges that defendants abandoned development of the acquired assets "[a]s soon as . . . potential delays" arose to pursue a transaction with plaintiff's competitor, whose own pediatric asthma product was close to receiving FDA approval. Compl. ¶ 69; see also id. ¶¶ 67-68. These allegations fail to state a violation of the CSA's "diligent efforts" standard because that standard specifically contemplates that defendants' actions will be informed by, inter alia, "the competitiveness of alternative or competing compounds or products, . . . the nature and extent of their market exclusivity, [and] the likelihood of regulatory approval." CSA § 1.[4]

---

[4] The district court concluded that plaintiff did not state a violation of the "diligent efforts" standard because the complaint alleged that defendants ceased development of the acquired assets due to professed safety concerns. See Verus Pharm. v. AstraZeneca AB, 2010 WL 3238965, at *10. Plaintiff now faults this conclusion as impermissible fact-finding, arguing that the district court effectively credited defendants' proffered reason over plaintiff's well-pleaded alternative. We need not address this argument because plaintiff's alternative also fails to state a violation of the "diligent efforts" standard for the reasons stated above.

6

          (iii)    CSA § 4.4.14

Finally, plaintiff contends that defendants breached CSA § 4.4.14 by refusing further to develop the acquired assets. Although that provision vests the Joint Development Committee with authority to "determine whether and when to discontinue any Studies," CSA § 4.4.14, the Joint Development Committee itself is vested only with responsibility for "overseeing the development of the Products," id. § 4.4. Thus, although the Joint Development Committee was authorized to direct how the acquired assets would be developed, defendants retained authority to determine whether they should be developed at all through the use of diligent efforts.[5] As a consequence, plaintiff fails to state a § 4.4.14 breach.

          c.     ROA

Plaintiff contends that its right to repurchase the acquired assets never matured because it did not receive a timely or complete Loss Amount Certificate ("LAC"), and that defendants therefore breached the ROA by asserting that plaintiff's repurchase rights had

---

[5] Plaintiff urges a different interpretation in light of defendants' own efforts to persuade the Joint Development Committee to cease development of the acquired assets. We need not resort to such extrinsic evidence because the language of CSA § 4.4 is clear. See, e.g., Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 569 (2002); see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). Moreover, defendants' responsibilities to use "Diligent Efforts" terminated on the "Diligence Covenant Termination Date," or October 2, 2008. CSA § 1. Therefore defendants' efforts to persuade the Joint Development Committee to discontinue the studies are irrelevant to the breach of contract claim as the parties were no longer subject to product development obligations at the time of the defendants' attempts at persuasion. Rather, the parties were only subject to their respective repurchase obligations.

expired.[6]

        (i)     Timeliness

Plaintiff's timeliness argument relies on its contention that the Earnout Payment Termination Date ("EPTD"), see APA Ex. 1, which triggered defendants' obligation to submit an LAC, see APA § 9.6.2 (requiring LAC to be submitted within five business days of EPTD), had not yet occurred when defendants submitted their LAC on October 8, 2008. This is not correct.

As relevant for this appeal, the EPTD was the EOP II Drop Dead Date, which was defined to be October 2, 2008. See APA Ex. 1. Plaintiff submits that the EOP II Drop Dead Date was subject to an automatic extension provision so long as defendants "[were] using commercially reasonable best efforts" to pursue an EOP II meeting. Id. But that provision does not apply because, as plaintiff itself recognizes, defendants had ceased using any such efforts as of October 2, 2008. See Compl. ¶¶ 57-58. While plaintiff points to other allegations indicating defendants' earlier pursuit of an EOP II meeting in June 2008, the fact remains that plaintiff's own allegations indicate that by October 2, 2008, defendants had altogether ceased efforts to take the acquired assets to an EOP II meeting. Therefore, the EOP II Drop Dead Date was not extended, and defendants' October 8, 2008 LAC was timely.

---

[6] In its complaint, plaintiff also alleges that, assuming defendants' LAC was timely and complete, defendants wrongly rejected plaintiff's Exercise Notice. Instead, the district court construed plaintiff's Exercise Notice as a counter-offer that defendants were entitled to and did reject. See Verus Pharm., Inc. v. AstraZeneca AB, 2010 WL 3238965, at *9. Plaintiff does not challenge the district court's construction. Rather, it argues that because an Exercise Notice was not then required, plaintiff "was free to later send a second Exercise Notice." Appellant's Br. at 42 n.36. That argument is forfeited and, in any event, fails because plaintiff's contention that its Exercise Notice obligation had not yet matured is not supported by the ROA.

(ii)    Completeness

Alternatively, plaintiff contends that the LAC was incomplete because of objections raised in an October 22, 2008 letter to defendants. See ROA § 2.2 (indicating Exercise Notice must be transmitted within 45 days "after delivery of the complete [LAC]"). Although plaintiff now asserts that "material information about the liabilities that [plaintiff] would be assuming upon a Repurchase Closing" was omitted from the LAC, Reply Br. at 12 (citing Compl. ¶ 61), it did not identify that objection in its October 22, 2008 letter. In any event, to the extent this belated assertion references information required to be in the LAC, namely "the amounts referred to in Section 2.3.1(ii), (iv), and (v)," ROA § 12.4(a), the LAC did include such information. Plaintiff's dispute as to the accuracy of that information, therefore, goes to finality of the LAC, see APA § 9.6.3(a), a dispute which may only be resolved through mandatory arbitration, see id. § 9.6.3(b), and provides no cause to delay the potential repurchase closing, see id. § 9.6.3(c). Consequently, plaintiff's argument that its obligation to submit an Exercise Notice never matured fails as a matter of law.

2.    Other Claims

Having rejected plaintiff's claims for breach of the relevant contracts, we further conclude that plaintiff's other claims – for anticipatory breach, fraud, conversion, unjust enrichment, and breach of the implied covenant of good faith and fair dealing – must be dismissed for the reasons stated by the district court. See Verus Pharm., Inc. v. AstraZeneca AB, 2010 WL 3238965, at *11-13.

9

3.      Leave to Amend

Plaintiff submits that the district court abused its discretion in failing to grant a request for leave to amend the complaint, a request plaintiff included on the final page of its brief in opposition to defendants' motion to dismiss and did not renew after grant of the motion. See, e.g., Chavis v. Chappius, 618 F.3d 162, 167 (2d Cir. 2010) (reviewing denial of leave to amend complaint for abuse of discretion). Our precedent clearly holds that a district court does not abuse its discretion in declining to address such informal requests for leave to amend. See In re Lehman Bros. Mortgage-Backed Sec. Litig., --- F.3d ----, 2011 WL 1778726, at *16 (2d Cir. 2011) (quoting In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006)).

4.      Conclusion

We have considered plaintiff's remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court

10